# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:17-CR-00291-04 |
| v. | (Chief Judge Brann) |
| RAYMOND HOWARD, | |
| Defendant. | |

## MEMORANDUM OPINION

### MARCH 22, 2024

## I.    BACKGROUND

In 2019, Raymond Howard was charged in a third superseding indictment with conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846.[1] Howard pled not guilty to the charge, and the matter eventually proceeded to a five-day jury trial.[2]

The evidence presented at trial demonstrated that, from October 2016 to July 2017, Howard acted as a bulk distributor of controlled substances—specifically heroin and carfentanil—to numerous individuals including codefendants Wayne Davidson, Markeese Askew, and Nathan Crowder in the Williamsport, Pennsylvania region.[3] These sales were generally arranged by cellphone, most of which were introduced by the Government through Davidson's cellphone records and his

---

[1]    Doc. 206.
[2]    Doc. 212.
[3]    Doc. 398 at 4-5.

communications with a contact named "Smizz" who, it demonstrated at trial, was Howard.[4]

The contacts between Howard and Davidson numbered in the several hundred during some months and included coded references to "breezies" and "fire."[5] One image sent from Howard to Davidson in November 2016 displayed seven bags of heroin with a firearm in the background.[6] Similarly, data from Crowder's cellphone showed regular contact with Howard, with contacts also reaching more than four hundred in one month, and there were dozens of contacts between Howard and Askew.[7] One of Howard's customers testified at trial that she had purchased controlled substances from Howard.[8]

As a result of the evidence presented at trial, the jury convicted Howard of the conspiracy charge and found that the offense involved 100 grams or more of a mixture or substance containing heroin.[9] A Presentence Report ("PSR") was thereafter drafted in preparation for sentencing.[10]

The PSR determined that, because Howard's offense involved between 100 and 300 grams of heroin and carfentanil mixture, the base offense level was 30,[11]

---

[4]   *Id.* at 5.
[5]   *Id.* at 5-6.
[6]   *Id.* at 5.
[7]   *Id.* at 9.
[8]   *Id.* at 5.
[9]   Doc. 374.
[10]   Doc. 398.
[11]   *Id.* at 10; *U.S. Sentencing Guidelines Manual* § 2D1.1(c)(5) (2018).

and increased the offense level by 2 levels because Howard possessed a dangerous weapon during the offense, as demonstrated by the photograph of controlled substances that included a firearm in the background, for a total offense level of 32.[12] The PSR noted that, based on the United States Court of Appeals for the Third Circuit's *en banc* opinion in *United States v. Nasir*,[13] inchoate offenses such as conspiracy are not predicate offenses for purposes of the career offender enhancement and, therefore, Howard was not a career offender.[14]

The PSR further detailed Howard's lengthy criminal history—including four prior distribution-related offenses—which resulted in fifteen criminal history points and a criminal history category VI.[15] With an offense level of 32 and a criminal history category VI, the PSR calculated an advisory Sentencing Guidelines range of 210 to 262 months' imprisonment.[16]

Howard's attorney ("Counsel") filed objections to the PSR contesting, *inter alia*, the two-level increase for possession of a firearm.[17] Counsel argued that it was impossible to determine when the photograph depicting the firearm was taken, and therefore nothing demonstrated that the firearm was possessed during the existence

---

[12]   Doc. 398 at 10-11; USSG § 2D1.1(b)(1).
[13]   982 F.3d 144 (3d Cir. 2020). The Supreme Court of the United States later vacated that judgment, *United States v. Nasir*, 142 S. Ct. 56 (2021), but the Third Circuit on remand reaffirmed its earlier ruling. *United States v. Nasir*, 17 F.4th 459, 472 (3d Cir. 2021) (*en banc*).
[14]   Doc. 398 at 11.
[15]   *Id.* at 12-17.
[16]   *Id.* at 21; USSG Ch. 5 Pt. A (Sentencing Table).
[17]   Doc. 399 at 3-4; Doc. 447 at 2-3.

of the conspiracy.[18] This Court overruled the objection and concluded that the picture depicting drugs and a firearm, sent in the context of arranging a drug transaction, demonstrated that Howard possessed the firearm during the conspiracy, and that it was not clearly improbable that the firearm was connected to the conspiracy.[19]

The Court ultimately sentenced Howard to 300 months' imprisonment.[20] The Court imposed this upward variant sentence based primarily upon the severity of the offense.[21] Most notably, this Court determined by a preponderance of the evidence that the drugs to which Howard was connected resulted in the overdoses of 51 individuals, with a number of these overdoses resulting in serious harm to the users, whose lives were saved only through timely medical intervention.[22]

Howard appealed his conviction and sentence, arguing that it was error to permit his trial to proceed given the Government's belated notice of expert testimony related to coded drug terms at trial.[23] The Third Circuit determined that, regardless of whether the Government provided untimely notice of the expert testimony, there was no prejudice, as Howard had not demonstrated that earlier disclosure of the expert testimony would have altered either the verdict or the sentence.[24]

---

[18]   Doc. 447 at 2-3. *See also* Doc. 465 at 6-7.

[19]   Doc. 465 at 9.

[20]   Doc. 451.

[21]   Doc. 465 at 51-57.

[22]   *Id.* at 52-54.

[23]   *United States v. Howard*, No. 21-1920, 2022 WL 2452302, at *1 (3d Cir. July 6, 2022), *cert. denied*, 143 S. Ct. 509 (2022).

[24]   *Id.*

In 2023, Howard filed this timely 28 U.S.C. § 2255 motion challenging his conviction and sentence.[25] In his motion, Howard raises four broad claims, some with numerous subclaims. First, he argues that he received ineffective assistance of counsel during his trial. Specifically, Howard contends that Counsel was ineffective in failing to: (1) object to the admissibility of text messages between Howard and Davidson on the ground that the communications were hearsay;[26] (2) object to what Howard alleges was expert testimony from Justin Snyder;[27] (3) object to certain testimony from Detective Joshua Bell;[28] (4) object to testimony from the overdose victims, as Howard believes the testimony was irrelevant and designed only to inflame prejudices, and was cumulative of other testimony;[29] (5) call Davidson as a witness, since he purportedly provided an affidavit stating that "Smizz" is not Howard and Howard did not conspire with him;[30] (6) effectively cross-examine a Government witness who denied the accuracy prior statements that he had made and was allegedly threatened with perjury by the Assistant United States Attorney;[31] and (7) present an expert witness to rebut the Government's expert witness on coded drug terms.[32]

---

[25]   Doc. 479.
[26]   Doc. 479 at 3; Doc. 480 at 14-17.
[27]   Doc. 479 at 8; Doc. 480 at 17-21.
[28]   Doc. 479 at 9; Doc. 480 at 21-25.
[29]   Doc. 479 at 10; Doc. 480 at 26-31.
[30]   Doc. 479 at 11; Doc. 480 at 32-34.
[31]   Doc. 479 at 13; Doc. 480 at 36-41.
[32]   Doc. 479 at 15; Doc. 480 at 43-44.

Second, Howard contends that Counsel was ineffective during the sentencing phase of his case, by failing to: (1) effectively object to a two-level increase for possessing a dangerous weapon, since there was no evidence demonstrating that Howard possessed a firearm during the course of the conspiracy;[33] (2) raise the impact that *Nasir* had on a potential career offender enhancement;[34] and (3) object to the drug quantity attributed to Howard, which was based solely on speculation.[35]

Third, Howard argues that Counsel was ineffective on appeal for failing to raise the issue of the competency of a Government witness who appeared impaired and admitted to having consumed alcohol prior to testifying.[36] Finally, Howard claims that the Government engaged in prosecutorial misconduct when it withheld metadata from the picture on Davidson's cellphone that Howard had sent which depicted drugs and a firearm in the background.[37]

The Government responds that Howard's § 2255 motion is without merit.[38] The Government argues that several of Howard's claims—specifically those relating to the purported failure to object to the cellphone text messages and photographs, Bell's testimony, and the competency of the witness who consumed alcohol—are without merit because Counsel did object, but those objections were overruled.[39] The

---

[33] Doc. 479 at 17; Doc. 480 at 6-10.
[34] Doc. 479 at 20; Doc. 480 at 13-14.
[35] Doc. 479 at 14; Doc. 480 at 41-43.
[36] Doc. 479 at 12; Doc. 480 at 35.
[37] Doc. 479 at 17; Doc. 480 at 6-10.
[38] Doc. 495.
[39] *Id.* at 25-28, 30-32.

Government also asserts that Counsel likely had a strategic reasons for not objecting to Snyder's testimony, the testimony of overdose victims, and the estimated drug quantities, as that testimony did not conflict with the chosen defense—that Howard was not "Smizz"—and many of these issues were explored thoroughly on cross-examination.[40]

The Government further contends that there were likely tactical reasons for not calling Davidson to testify given the statements he had made at his own sentencing that implicated Howard, and Howard has not presented any evidence to demonstrate that Counsel's decision to not call an expert witness was unreasonable.[41] Moreover, the Government asserts, no perjured testimony was presented at trial, and Howard has not demonstrated that any different cross-examination related to inconsistent testimony would have yielded different results.[42] Finally, the Government contends that Howard cannot demonstrate prejudice as to any of his claims, given the overwhelming evidence of guilt presented at trial.[43]

Howard has filed a reply brief, rendering this matter ripe for disposition.[44] For the reasons discussed below, the Court will deny Howard's motion.

---

[40] *Id.* at 26-29, 37-38.
[41] *Id.* at 29-30, 38-39.
[42] *Id.* at 30-37.
[43] *Id.* at 39-40.
[44] Doc. 496.

## II.   DISCUSSION

As discussed above, Howard raises four broad claims in his § 2255 motion: ineffective assistance of counsel during the trial phase of proceedings, ineffective assistance of counsel during the sentencing phase of proceedings, ineffective assistance of appellate counsel, and prosecutorial misconduct. The Court addresses these claims in turn.

### A.   Ineffective Assistance of Counsel

"In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court established a two-part test to evaluate ineffective assistance of counsel claims."[45] "The first part of the *Strickland* test requires 'showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"[46] In determining whether an attorney's performance is deficient, courts must "determine whether, in light of all the circumstances, the [attorney's] acts or omissions were outside the wide range of professionally competent assistance."[47] As the United States Supreme Court has emphasized:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful,

---

[45]   *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015).
[46]   *Id.* (quoting *Strickland*, 466 U.S. at 687).
[47]   *Strickland*, 466 U.S. at 690.

to conclude that a particular act or omission of counsel was unreasonable.[48]

"The second part [of the *Strickland* test] specifies that the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[49] "This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable."[50] In other words, a movant must establish a "a substantial likelihood" that any errors "changed the outcome of . . . trial."[51]

### 1.   Allegations of Ineffective Assistance of Counsel During Trial

With regard to Counsel's performance at trial, Howard first asserts that Counsel was ineffective for failing to object to the admissibility of text messages between Howard and Davidson on the ground that it constituted hearsay.[52] This claim fails for two reasons.

---

[48]  *Id.*

[49]  *Bui*, 795 F.3d at 366 (quoting *Strickland*, 466 U.S. at 694).

[50]  *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks omitted).

[51]  *Branch v. Sweeney*, 758 F.3d 226, 238 (3d Cir. 2014).

[52]  Doc. 479 at 3; Doc. 480 at 14-17.

First, Counsel objected to the admission of the text messages on the ground that, *inter alia*, they constituted hearsay.[53] This Court, however, overruled that objection.[54] Given that Counsel objected, there was no deficient performance. Second, even if there were deficient performance, there would be no prejudice because the hearsay argument is without merit, as this Court concluded at trial. Specifically, Federal Rule of Evidence 801(d)(2)(E) excludes from the definition of hearsay any statement offered against a party that "was made by the party's coconspirator during and in furtherance of the conspiracy." The relevant text messages between Davidson and Howard were undoubtedly in furtherance of their drug trafficking conspiracy and therefore fall under said exception meaning that, even if Counsel had failed to object, Howard would have suffered no resulting prejudice.

Turning next to Howard's contention that Counsel was ineffective in failing to object to Snyder's testimony,[55] the Court again concludes that Howard did not receive ineffective assistance of counsel. Howard argues that Snyder provided guised expert testimony regarding coded drug words and the meaning of photos contained in the cellphone exchanges between Howard—a.k.a. "Smizz"—and

---

[53] Doc. 455 at 94-101.
[54] *Id.* at 101.
[55] Doc. 479 at 8; Doc. 480 at 17-21.

Davidson.[56] Again Howard can demonstrate neither deficient performance nor prejudice.

First, there is no evidence that Counsel's decision not to object to that testimony was not based on sound trial strategy. This information—that the messages referred to controlled substances—did not conflict with Counsel's trial strategy of attempting to undermine any conclusion that "Smizz" was in fact Howard.[57] Counsel may have chosen not to contest Snyder's testimony so as to avoid drawing "additional attention to the questions" and highlighting them in the jury's mind.[58] At bottom, this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and there is simply no evidence here that it fell outside of that range.[59]

Second, no discernable prejudice resulted from Counsel's failure to object. As Howard himself correctly emphasizes, the questions asked of Snyder were substantial similar to those asked of Bell, and the answers provided were likewise similar.[60] Given that the challenged testimony was already introduced through Bell, even a successful objection would not have changed the information available to the jury or the ultimate verdict.

---

[56] *Id.*

[57] *See* Doc. 456 at 4-21 (Counsel's cross-examination of Snyder focused on demonstrating that "Smizz" may have been someone other than Howard).

[58] *Colon v. Wingard*, No. 3:15-CV-1526, 2022 WL 265948, at *12 (M.D. Pa. Jan. 27, 2022).

[59] *Strickland*, 466 U.S. at 689.

[60] Doc. 480 at 17.

Next, Howard argues that Counsel was ineffective in failing to object to several portions of Detective Bell's testimony.[61] Howard argues that Detective Bell's testimony "went to the ultimate issue in the case" because he testified regarding the meaning of messages exchanged between Davidson and "Smizz" including quantities of heroin sold.[62]

This claim fails for two obvious reasons. First, Counsel objected to Detective Bell's testimony on the ground that it went to the ultimate issue in the case.[63] However, the Court overruled that objection and permitted Detective Bell to testify.[64]

Second, Detective Bell's testimony did not go to the ultimate issue in the case; rather, he testified that certain coded words referenced heroin, prices, and quantities, and examined pictures sent through text message to offer his expert opinion that they depicted certain quantities of heroin.[65] There was nothing improper about such testimony,[66] and it did not answer the ultimate issue in this case.[67] Detective Bell's

---

[61] Doc. 479 at 9; Doc. 480 at 21-25.

[62] Doc. 480 at 21.

[63] Doc. 453 at 12-21.

[64] *Id.*; Doc. 456 at 110.

[65] Doc. 456 at 104-29.

[66] And, contrary to Howard's argument, such testimony did not go beyond the expert notice provided by the Government. *See* Doc. 356 at 3 (stating that Detective Bell would testify to, *inter alia*, the fact that Davidson and "Smizz" conspired to distribute certain quantities of heroin).

[67] *Cf. United States v. Salgado*, No. 22-1878, 2023 WL 1097765, at *1-2 (3d Cir. Jan. 30, 2023) (finding no error in permitting government investigator's testimony regarding coded drug words).

testimony only established that the cellphone conversations involved heroin trafficking and said nothing about the identity of "Smizz." The ultimate question in the case was whether Howard conspired to distribute heroin—i.e., whether Howard was "Smizz." Accordingly, Howard can demonstrate neither deficient performance nor prejudice.

Howard further contends that Counsel was ineffective for failing to object to testimony from individuals who overdosed, as such testimony was irrelevant and designed only to evoke an emotional response, was cumulative, and there was no but-for causation established between Howard's distribution and those overdoses.[68] The Court again finds Howard's contention without merit, as any objection would have been meritless.

As the Third Circuit has explained, there are generally two types of evidence: extrinsic evidence—evidence not related to the crime—and intrinsic evidence— evidence that "is admissible as part and parcel of the charged offense."[69] Intrinsic evidence describes "two narrow categories of evidence:" evidence that "directly proves the charged offense" and "uncharged acts performed contemporaneously with the charged crime [that] facilitate the commission of the charged crime."[70] "As

---

[68]   Doc. 479 at 10; Doc. 480 at 26-31.
[69]   *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010).
[70]   *Id.* at 248-49.

a practical matter," intrinsic evidence generally covers background evidence "or completes the story evidence."[71]

Here, the testimony of the overdose victims was intrinsic to the charged offense. Those witnesses generally testified to four critical facts: (1) they purchased heroin; (2) they or someone they were with used the heroin and overdosed on it; (3) they were revived by medical professionals with the use of Narcan; and (4) how they arranged to purchase the heroin—including from whom they purchased it and what the heroin packaging looked like.[72] This information established two important facts with respect to Howard's distribution activities.

First, the evidence confirmed that the substance trafficked to these witnesses by either Davidson or Howard—depending on the witness—was in fact heroin, as alleged in the third superseding indictment,[73] rendering this testimony admissible.[74] Second, the witnesses described in some detail the look and packaging of the heroin that they purchased, which largely mirrored the substances displayed in pictures sent from "Smizz"—a.k.a. Howard—to Davidson.[75] This connected the heroin sold by Howard to Davidson with the heroin that Davidson repackaged and resold in lower

---

[71] *Id.* at 249.

[72] Doc. 454 at 67-73, 92-100; Doc. 455 at 37-42, 48-54; Doc. 456 at 46-52.

[73] *Id.*

[74] *See, e.g.*, *United States v. Watley*, 46 F.4th 707, 714 (8th Cir. 2022) (finding no error in the admission of testimony related to an overdose as that testimony "was relevant to prove the substance Watley distributed was heroin" since "Narcan reverses only the effects of opioids like heroin").

[75] *Compare* Doc. 454 at 67-73, 92-100; Doc. 455 at 37-42, 48-54; Doc. 456 at 46-52, *with* Doc. 456 at 104-29.

quantities to the witnesses who testified, which helped to establish that Howard was part of a heroin trafficking conspiracy, and not merely an individual seller of heroin.[76] Because the testimony that Howard now challenges was intrinsic to his case, it was admissible, and Counsel did not perform deficiently by failing to raise a meritless objection, nor was Howard prejudiced by said failure.

The Court turns next to Howard's argument that Counsel was ineffective for failing to present exculpatory testimony from Davidson, who purportedly provided Howard with an affidavit that states Howard and "Smizz" are not the same person and Howard did not conspire with Davidson.[77] Importantly, when basing a claim of ineffective assistance of counsel on the failure to call a particular witness, "there must be a clear showing that the testimony would have been material and favorable," and a movant "must make a specific showing as to what the evidence would have been, and prove that this witness's testimony would have produced a different result."[78]

Howard has failed to make a sufficient showing as to what Davidson's testimony actually would be, or that it would be favorable. Notably, Howard does

---

[76]  Furthermore, as the United States Court of Appeals for the Sixth Circuit has noted, testimony from overdose victims regarding those overdoses is "both 'intrinsic' and proper background evidence in clarifying [their] motives for testifying, as well as revealing any potential bias [they] harbored against [Howard], which could have prejudiced his case." *United States v. Sumlin*, 956 F.3d 879, 890 (6th Cir. 2020).

[77]  Doc. 479 at 11; Doc. 480 at 32-34.

[78]  *United States v. Senke*, No. 3:16-CR-00373, 2023 WL 7647295, at *12–13 (M.D. Pa. Nov. 14, 2023) (internal quotation marks omitted).

not provide Davidson's purported affidavit to the Court or provide any evidence whatsoever that Davidson would testify on his behalf, let alone testify favorably for him. Importantly, and in contradiction of Howard's unsupported assertion that Davidson would testify that Howard is not "Smizz" and did not conspire with Davidson, Davidson under oath confirmed both of these facts. At his change of plea hearing, while under oath Davidson, in admitting to his own culpability, confirmed that:

> an individual saved in [Davidson's] phone as Smizz, S-m-i-z-z, and subsequently identified as Raymond Howard, was a source of supply of heroin to Wayne Davidson and others.

> Specifically, . . . from October, 2016, to July of 2017, Howard provided bulk amounts of heroin and heroin mixtures to Davidson that Davidson subsequently distributed to a customer base in the Williamsport area.[79]

The available evidence therefore affirmatively refutes any suggestion that Davidson would testify that he did not conspire with Howard, or that Howard was not "Smizz." And, because Davidson's change of plea hearing occurred on October 2, 2020, more than two weeks prior to the commencement of Howard's trial, Counsel would have had access to that testimony before trial. This testimony would give any competent attorney great hesitation in calling Davidson to testify on behalf of the defense. Consequently, the Court sees no deficient performance in Counsel's failure to call Davidson as a witness. Moreover, given that Howard has not established that

---

[79] *United States v. Davidson*, 4:17-CR-00291-3, Doc. 354 at 2, 24-26 (Md. Pa. Oct. 2, 2020).

Davidson would have testified favorably on his behalf, the Court likewise cannot conclude that Howard suffered any prejudice from the failure to call Davidson as a witness.

Howard next asserts that he suffered ineffective assistance of counsel because Counsel failed to challenge the Government's coercion of a witness.[80] Specifically, Howard contends that the Government called Kenneth Frierson to the stand despite knowing that he had consumed alcohol, had agreed not to charge him with crimes if he testified, and then threatened him with charges of perjury when, at trial, he testified inconsistently with his prior statements.[81]

As to Frierson's purported intoxication, that in no way relates to Government coercion. In any event, Counsel objected to Frierson's testimony on the ground that he was intoxicated, but this Court overruled the objection after finding that Frierson was competent to testify and "does not seem to be overly impaired, if he's impaired at all."[82]

Turning to Howard's claim that Frierson was coerced into testifying based on threats of prosecution for perjury, the Court finds no deficient performance in failing to object because there was no reason to object, and any objection would have been meritless. As an initial matter, the Government never threatened to prosecute

---

[80]   Doc. 479 at 13; Doc. 480 at 36-41.
[81]   *Id.*
[82]   Doc. 454 at 134-36.

Frierson for perjury.[83] Only once did the Government even mention the word perjury, and that was only to confirm that Frierson's previous grand jury testimony—which the Government was using to examine Frierson—was given under oath.[84]

And even if the Government had threatened Frierson with perjury, such threats would not have impacted Howard's due process rights such that it would constitute prosecutorial misconduct. The Third Circuit has held that repeated threats of prosecution for perjury or other similar acts to intimidate a defense witness from testifying may violate a defendant's due process rights.[85] And although the Third Circuit has never applied that rule to a prosecution witness rather than a defense witness, the United States Court of Appeals for the Ninth Circuit has convincingly explained that intimidation of a Government witness that "leads the witness to materially change his or her prior trial testimony can, in certain circumstances, violate due process."[86]

However, Howard's claim has two basic problems. First, Frierson, even after the Government purportedly threatened him with perjury, did not change his testimony, which remained favorable to Howard.[87] Because any alleged threat did

---

[83] *See id.* at 131-64.
[84] *Id.* at 154.
[85] *United States v. Quinn*, 728 F.3d 243, 257-58 (3d Cir. 2013).
[86] *United States v. Juan*, 704 F.3d 1137, 1142 (9th Cir. 2013).
[87] *See* Doc. 454 at 164-91 (cross-examination of Frierson where he continued to deny prior statements implicating Howard).

not lead Frierson "to materially change his . . . prior trial testimony," no due process violation occurred.[88] Second, even if the Government's sole reference to perjury may constitute a threat of prosecution, it is well-established that a warning regarding perjury is improper only when, "under the totality of the circumstances, the substance of what the prosecutor communicates to the witness is a threat over and above what the record indicates is necessary," while "in many circumstances, warning a witness about the possibility and consequences of perjury charges is warranted."[89] Here, nothing indicates that the Government's statement regarding perjury crossed any sort of line into a threat that was over and above what was necessary and, accordingly, no objection was warranted.

Moreover, contrary to Howard's assertion, there is no indication that the Government failed to turn over impeachment evidence against Frierson and nothing in the record may reasonably be read as indicating that the Government instructed Frierson to testify in any particular manner,[90] nor is there anything wrong in the Government deciding not to prosecute Frierson for other crimes if he cooperated in

---

[88] *Juan*, 704 F.3d at 1142.

[89] *Id.* (internal quotation marks omitted). *See also Quinn*, 728 F.3d at 258 ("The prosecutor's warnings concerning the dangers of perjury cannot be emphasized to the point where they threaten and intimidate the witness into refusing to testify" (brackets and internal quotation marks omitted); *United States v. Clemons*, 843 F.2d 741, 754 (3d Cir. 1988) ("so long as the actor is seeking truthful testimony, he may threaten lawful harm, *e.g.,* to seek a perjury prosecution").

[90] If anything, the record indicates that Frierson testified truthfully in front of the grand jury but changed his testimony in front of Howard at trial because he was fearful and had "to worry about whether I'm gonna be breathing tomorrow." Doc. 454 at 162.

this case. Because there is no deficient performance and no prejudice from Counsel's failure to object to any of these purported issues, this claim of ineffective assistance of counsel also fails.

Lastly, Howard argues that Counsel was ineffective at trial for failing to present an expert witness to rebut the Government's description of the coded drug words used in the text messages between Howard and Davidson.[91] To establish this claim, Howard must demonstrate that such expert "witnesses were available, that their testimony would have been admissible, [and] that their testimony would have been helpful to his defense."[92]

Howard has failed to establish that any expert witnesses were available to testify on his behalf, let alone that they would have offered testimony that was helpful to his defense. As the Assistant United States Attorney aptly observed in addressing this issue, it was doubtful that Counsel could "find an expert who will come to any significantly different conclusion than Detective Bell . . . that brizzy doesn't mean brick and that brick doesn't mean 250 bags of heroin within the heroin trade, because it really is, perhaps, the only reasonable interpretation of this drug related messaging."[93] Given the context of the messages, it is nearly impossible to conclude, as Howard suggests is possible, that hammer meant firearm or that fire

---

[91] Doc. 479 at 15; Doc. 480 at 43-44.
[92] *United States v. Holmes*, 387 F. App'x 242, 248 (3d Cir. 2010).
[93] Doc. 453 at 20.

meant marijuana.[94] Alternative explanations for the meaning of these messages is even more unlikely given that, as the Third Circuit explained on appeal, the interpretation of such messages is "a 'relatively uncontroversial' topic."[95]

Consequently, Howard has not demonstrated that Counsel performed deficiently in failing to call an expert witness, or that he was prejudiced by said failure. This claim is therefore also denied.

### 2. Allegations of Ineffective Assistance of Counsel During Sentencing

The Court next turns to Howard's claims related to ineffective assistance of counsel during the sentencing phase of this case. Howard's claim[96] that Counsel was ineffective in failing to raise an objection to the PSR based on the Third Circuit's ruling in *United States v. Nasir*[97] is easily disposed of: the PSR specifically noted that *Nasir* had issued and, as a result, Howard was not a career offender.[98] Because the career offender enhancement was not applied, there simply was nothing for Counsel to object to, and therefore no ineffective assistance of counsel.

As to Howard's assertion that Counsel was ineffective in failing to "adequately dispute" a two-level increase pursuant to USSG § 2D1.1(b)(1) for

---

[94]   Doc. 480 at 43. *See* Doc. 456 at 112-29 (Bell relating the content of the messages exchanged between Howard and Davidson and interpreting said messages).

[95]   *Howard*, 2022 WL 2452302 at *1 (quoting *United States v. Gibbs*, 190 F.3d 188, 211 (3d Cir. 1999)).

[96]   Doc. 479 at 20; Doc. 480 at 13-14.

[97]   17 F.4th at 472.

[98]   Doc. 398 at 11.

possessing a dangerous weapon,[99] the Court finds this claim to be without merit. Counsel objected to the application of § 2D1.1(b)(1), arguing that it was impossible to determine when the photograph that depicted a firearm in close proximity to controlled substances was taken, and nothing else in the record permitted the conclusion that Howard possessed a firearm during the course of the conspiracy.[100]

Despite Counsel's vigorous arguments, this Court overruled the objection.[101] The Court found that the picture in question, sent during the course of the conspiracy, depicted drugs and a firearm and therefore demonstrated that Howard possessed the firearm during the conspiracy, and it was not clearly improbable that the firearm was connected to the conspiracy.[102]

Although Howard now contends that Counsel should have argued more vigorously that no data demonstrated when the picture was taken and there was no other evidence that he possessed a weapon during the course of the conspiracy,[103] that is precisely what Counsel argued.[104] At sentencing, Counsel asserted that the Government could not "prove when the picture was taken,"[105] which mirrored Counsel's argument in his Presentencing Memorandum that the Government

---

[99]   Doc. 479 at 17; Doc. 480 at 6-10.
[100]  Doc. 447 at 2-3; Doc. 465 at 6-7.
[101]  Doc. 465 at 9.
[102]  *Id.*
[103]  Doc. 480 at 6-10.
[104]  *See* Doc. 447 at 2-3; Doc. 465 at 6-7.
[105]  Doc. 465 at 7.

"cannot establish when the photo was taken."[106] Counsel also argued that "no gun was found on the Defendant and no one testified that they saw defendant in possession of a gun," meaning the Government could not establish that Howard possessed a weapon during the course of the conspiracy.[107]

Howard's claim therefore fails for the basic fact that Counsel objected to the enhancement and raised the issues that Howard argues should have been raised, meaning he did not perform deficiently. And Howard does not—and cannot—explain how Counsel could have argued this position more vigorously or effectively. Moreover, given the Court's conclusion that the evidence did establish by a preponderance of the evidence that Howard had possessed a firearm in relation to the heroin distribution conspiracy, Howard cannot demonstrate any prejudice from Counsel's performance.[108]

Howard also claims that Counsel was ineffective when he failed to object to the drug quantities attributed to Howard, as that information was based solely on speculation from a photograph.[109] Counsel did not perform deficiently for two reasons. First, Detective Bell—the individual who testified as to the quantities of

---

[106] Doc. 447 at 2.

[107] *Id.*

[108] To the extent that Howard argues Counsel was ineffective for failing to raise this issue on appeal, given the issue's meritless nature, Counsel did not perform ineffectively on appeal. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument").

[109] Doc. 479 at 14; Doc. 480 at 41-43.

heroin depicted in the picture—did not engage in impermissible speculation regarding drug quantities.

Rather, Detective Bell testified that he was intimately familiar with the appearance of heroin in Williamsport, having been undercover, utilized confidential informants to make controlled purchases, observed heroin more than 500 times, and executed more than 200 drug related search warrants.[110] In Detective Bell's experience, the substance depicted in the picture was heroin or a mixture containing heroin, as the substance was the same color as heroin, usually off-white or light brown, and was placed in a "common packaging method" for heroin.[111] Detective Bell's testimony was therefore well-grounded in his experience, and any objection would have been overruled.

Second, although Counsel did not object to that testimony, he thoroughly cross-examined Detective Bell. Counsel elicited from Detective Bell that he did not examine the substances in person, did not weigh them, and did not test them for controlled substances.[112] This effectively challenged Detective Bell's opinion, although the challenge was ultimately fruitless. Counsel therefore performed effectively with respect to Detective Bell's testimony, and Howard suffered no prejudice from Counsel's failure to object to that testimony.

---

[110]  Doc. 456 at 105-09.
[111]  *Id.* at 122-23.
[112]  *Id.* at 129-30.

As to Counsel's failure to object to the drug quantity assigned by the PSR, any objection would have been frivolous. The jury in this matter determined that Howard was responsible for conspiring to distribute 100 grams or more of a substance containing heroin.[113] The Sentencing Guidelines provide a base offense level of 30 whenever an offense involves between 100 and 300 grams of a mixture or substance containing heroin.[114] Given that a jury concluded Howard was responsible for at least 100 grams of a mixture or substance containing heroin, the offense level applied was the lowest available under the Guidelines, and Counsel had nothing to which he could object. He therefore did not perform deficiently in failing to lodge an objection, nor was Howard prejudiced by that failure.

### 3.      Ineffective Assistance of Appellate Counsel

Howard's final claim of ineffective assistance of counsel relates to Counsel's performance on appeal. Specifically, Howard asserts that Counsel was ineffective for failing to raise on appeal the issue of the competency of Frierson, who admitted to having consumed alcohol and who Howard contends was "obviously impaired."[115]

It is well settled that "[t]he two-prong standard of *Strickland v. Washington,* 466 U.S. 668 (1984), applies to a defendant's claim that his appellate counsel was

---

[113]  Doc. 374 at 2.
[114]  USSG § 2D1.1(c)(5).
[115]  Doc. 479 at 12; Doc. 480 at 35.

ineffective."[116] Movants must therefore show both deficient performance and prejudice.[117] When claiming ineffective assistance of appellate counsel, to demonstrate prejudice, a movant "must show that there is 'a reasonable probability'—'a probability sufficient to undermine confidence in the outcome,' but less than a preponderance of the evidence—that his appeal would have prevailed had counsel's performance satisfied constitutional requirements."[118]

The Court cannot conclude that Counsel either performed deficiently, or that Howard was prejudiced by the failure to raise this claim on appeal, as the claim is without merit. The Third Circuit has explained that:

> Every witness is presumed competent to testify, Fed. R. Evid. 601, so long as the witness (1) has personal knowledge of the matter, Fed. R. Evid. 602, and (2) gives an oath or affirmation to testify truthfully, Fed. R. Evid. 603. There are "no mental or moral qualifications for testifying as a witness," and "a witness wholly without capacity is difficult to imagine." Fed. R. Evid. 601, Advisory Committee Notes to 1972 Proposed Rules. "Mental capacity is highly relevant to credibility and requires no special treatment to render evidence about mental capacity admissible along with other matters bearing upon perception, memory, and narration of witnesses." *Id.* Because "the question is particularly suited to the jury as one of weight and credibility," "discretion is regularly exercised in favor of allowing the testimony." *Id.* The trial court "must decide any preliminary question about whether a witness is qualified," Fed. R. Evid. 104, and its determination about the competency of a witness to testify falls within its sound discretion, *United States v. Hicks*, 389 F.2d 49, 50 (3d Cir. 1968).[119]

---

[116] *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

[117] *Id.*

[118] *Id.* (quoting *Strickland,* 466 U.S. at 694-95).

[119] *United States v. Meehan*, 741 F. App'x 864, 874 (3d Cir. 2018) (ellipsis and brackets omitted).

At trial, Counsel objected to Frierson's testimony on the ground that he had been drinking and was not "a suitable witness . . . in the condition that he's in."[120] Indeed, on cross-examination Frierson candidly admitted that he had consumed alcohol prior to testifying—specifically a large quantity of beer—but stated that he was not intoxicated.[121] Despite his consumption of alcohol, after observing Frierson's appearance, demeanor, and ability to answer questions, this Court determined that Frierson was competent and did "not seem to be overly impaired, if he's impaired at all."[122] The Court therefore made the initial determination that Frierson was competent to testify, and left to the jury the question of how much weight to afford his testimony in light of his consumption of alcohol.

During Frierson's testimony, it was readily apparent that he understood the questions asked of him and was able to provide responsive answers.[123] And Counsel duly cross-examined Frierson on his use of alcohol, emphasizing that Frierson had consumed alcohol that morning, eliciting the exact quantity of alcohol consumed (40 ounces), and inquiring as to whether Frierson had used any other drugs.[124]

Although Howard asserts that Frierson's "rambling, incoherent, and confusing testimony demonstrated his obvious impairment,"[125] Frierson's testimony

---

[120] Doc. 454 at 134.
[121] *Id.* at 133, 165-66.
[122] *Id.* at 135-36.
[123] *See id.* at 131-92.
[124] *Id.* at 165-66.
[125] Doc. 480 at 35.

was not nearly so bad as Howard attempts to portray. While the testimony was at times rambling and addled, the primary reason why the testimony was sometimes disjointed appeared to relate to Frierson's extremely nervous demeanor. Frierson's nervousness was readily apparent, and he acknowledged that he was "so nervous" and "[v]ery" upset.[126] This was likely related to the fact that he was "[m]ore than" "worried for [his] safety" because "after this is over, said and done, I still got to worry about whether I'm gonna be breathing tomorrow"—a less than subtle reference to the fact that he feared his decision to testify at Howard's trial would result in lethal consequences.[127]

In many respects then, this case is similar to the facts that confronted by the Third Circuit in *United States v. Meehan*. Here the witness admitted to having consumed alcohol the morning of his testimony, while in *Meehan* the witness admitted to having used heroin the morning of her testimony.[128] But, as in *Meehan*, the Court "was in the best position to observe [the witness'] demeanor and to determine [his] ability to comprehend the questions posed to [him]."[129] And, as in *Meehan*, Counsel was permitted to question the witness regarding drug and alcohol use and, given the extended duration of the cross-examination, "there is no indication

---

[126] Doc. 454 at 148, 166.
[127] *Id.* at 162.
[128] *Meehan*, 741 F. App'x at 873.
[129] *Id.* at 874.

that counsel's questioning of [Frierson] on this issue crowded out its ability to question [him] on other pertinent subjects."[130]

It is apparent that the same result would be warranted had Counsel raised this issue on appeal: the Third Circuit would have affirmed the decision to permit Frierson's testimony.[131] Consequently, raising this issue on appeal would not have altered the outcome of the appeal, and Howard suffered no prejudice.[132] This claim therefore fails.

## B.  Prosecutorial Misconduct

Finally, Howard argues that the Government engaged in prosecutorial misconduct when it withheld metadata from the picture—recovered from Davidson's cellphone—that was sent by Howard, and which contained an image of drugs and a firearm.[133] This claim is likewise without merit.[134]

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), "the government has a duty to disclose 'evidence that is favorable to the defense and material to the

---

[130]  *Id.*

[131]  *See id.*

[132]  *Cross*, 308 F.3d at 315.

[133]  Doc. 479 at 18; Doc. 480 at 10-13.

[134]  This claim is procedurally defaulted, as Howard could have raised this issue on appeal but did not, and is therefore reviewable only if Howard shows cause for his default and prejudice. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Cause may be demonstrated by showing, *inter alia*, ineffective assistance of counsel. *United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005). As discussed below, Howard's claim is without merit and, accordingly, appellate counsel did not perform deficiently by failing to raise this issue on appeal. Because no other established form of cause is applicable here, Howard's claim is procedurally defaulted and unreviewable on that ground alone.

defendant's guilt or punishment.'"[135] "Thus, there are three prerequisites to a *Brady* violation: (1) the government must have failed to disclose evidence; (2) that evidence must have been favorable to the defendant; and (3) that evidence must have been material."[136] "Evidence is 'material' only if there is a reasonable probability that its disclosure would have led to a different outcome at trial, and so undermines confidence in the verdict."[137] Third Circuit "precedent on the timing of *Brady* disclosures requires only that the government make the evidence available during the course of a trial in such a way that a defendant is able effectively to use it."[138]

The Government conducted an extraction of Davidson's cellphone, which pulled all data from that phone.[139] This information was introduced at trial and, while Counsel objected to its admission, he made no mention of any purported failure to turn the data over in discovery and, instead, implied that he had received the data.[140] The Government further asserts that, during the discovery process, it turned over to Howard all data that it had collected from the phones in this case.[141] Given these

---

[135] *United States v. Lacerda*, 958 F.3d 196, 218 (3d Cir. 2020) (quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012)).

[136] *Id.*

[137] *Id.* at 218-19.

[138] *United States v. Reyes-Romero*, 959 F.3d 80, 107 (3d Cir. 2020) (brackets and internal quotation marks omitted).

[139] Doc. 455 at 92-93.

[140] *Id.* at 97 (in response to statement that Counsel did not give notice that he would object to the authenticity of the data, Counsel stated "[y]our Honor, given the amount of discovery in this case—you know, it's hard to anticipate what documents the government is going to offer. I can't be held to know that until trial"). *See id.* at 94-101 (objections to testimony regarding data and discussion of those objections).

[141] Doc. 495 at 21-22.

facts, and the complete lack of evidence presented by Howard in support of his contention that metadata was not turned over, the Court concludes that he has failed in his burden of demonstrating that the Government did not disclose relevant evidence.[142]

Moreover, even if the Government had withheld metadata from Howard, there is no evidence whatsoever that such evidence was either favorable or material to Howard's case. That is to say, nothing suggests that any metadata would somehow disprove that the picture was sent by Howard during the course of the conspiracy. And absent such a suggestion, there is no "reasonable probability that its disclosure would have led to a different outcome at trial"[143] by either leading to a not guilty verdict or leading the jury to conclude that the Government did not meet its burden of proving that the offense involved 100 grams or more of a mixture containing heroin. Nor is there any evidence that any metadata would have undermined the conclusion at sentencing that Howard possessed a dangerous weapon in connection with the offense.

---

[142] Howard references this Court's statement at the beginning of the sentencing hearing that detailed the Government's obligations under *Brady*, and asserts that this demonstrates "that the Court was aware that something was amiss in this case." Doc. 480 at 11. However, Howard reads too much from that statement. In 2020, Federal Rule of Criminal Procedure 5 was amended to require that "on the first scheduled court date when both prosecutor and defense counsel are present, the judge shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law." Fed. R. Crim. P. 5(f)(1). The Court's statement at the sentencing hearing was merely a pro forma statement intended to comply with that Rule.

[143] *Lacerda*, 958 F.3d at 218-19.

Consequently, Howard has failed to sustain his burden of demonstrating prosecutorial misconduct, and this claim will be denied.[144] As all of Howard's claims fail, his § 2255 motion will be denied.

### C.    Certificate of Appealability

Because this Court will deny Howard's § 2255 motion, this decision will not be appealable unless this Court or a circuit justice issues a certificate of appealability.[145] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."[146] To satisfy this standard Howard must demonstrate that reasonable jurists would find that the Court's assessment of the constitutional claims is debatable or wrong.[147] This Court finds that Howard has not met this burden, and therefore declines to issue a certificate of appealability.

---

[144] To the extent that Howard claims Counsel was ineffective for failing to raise this issue before this Court or on appeal, because this claim is without merit, Counsel did not perform deficiently, nor did Howard suffer any resulting prejudice.

[145] 28 U.S.C. § 2253(c)(1)(B).

[146] *Id.* § 2253(c)(2).

[147] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that Howard's claims are without merit, and his 28 U.S.C. § 2255 motion will be denied. The Court will also deny a certificate of appealability.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge